IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

WILLIAM A. ACREE,

    Plaintiff,

v.

JOSEPH HUTCHENSON, et al.,

    Defendants.

CIVIL ACTION NO.: 6:17-cv-107

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, currently incarcerated at Georgia State Prison in Reidsville, Georgia, filed this 42 U.S.C. § 1983 cause of action, as amended, contesting certain conditions of his confinement. Docs. 1, 4. Defendants have moved to dismiss Plaintiff's claims for failure to exhaust administrative remedies. Doc. 23. For the following reason, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss. Doc. 23. I also **RECOMMEND** the Court **DISMISS without prejudice** Plaintiff's Complaint for failure to exhaust his administrative remedies, **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and **CLOSE** this case, and **DENY** Plaintiff *in forma pauperis* status on appeal.

## BACKGROUND

Plaintiff filed his initial Complaint on August 7, 2017, doc. 1, and amended as a matter of right on August 23, 2017, doc. 4.[1] In his Complaint, as amended, Plaintiff contends he filed a claim under the Prison Rape Elimination Act ("PREA") against Defendant Mosley on May 26,

---

[1] The facts in this section are drawn from Plaintiff's Amended Complaint. Doc. 4; see Fritz v. Standard Sec. Life Ins. Co. of New York, 676 F.2d 1356, 1358 (11th Cir. 1982) ("Under the Federal Rules, an amended complaint supersedes the original complaint.").

2017, after Defendant Mosley sexually harassed him. Doc. 4 at 8. Plaintiff asserts three days later, on May 31, 2017, Defendants Shoemaker, Fugitt, Mosley, and Williams sprayed a chemical agent into Plaintiff's cell while he was restrained. Id. at 7. Plaintiff contends that Defendant Hutchenson ordered these Defendants to take this action. Id. Plaintiff alleges that Defendants Shoemaker and Fuggitt dragged Plaintiff from his cell and took him to a strip cell for 18 hours before returning him to his cell which was still contaminated from the chemical spray. Id. Plaintiff claims he suffered chemical reactions and breathing problems as a result of Defendants' actions and further claims he was denied medical care after Defendants used chemical spray in his cell. Id. at 8.

Plaintiff claims he filed a grievance on June 5, 2017 regarding the use of chemical spray, and as of the time of filing his Amended Complaint, he had not received a response from the warden. Id. at 10–11. He further states he "wrote [to] the Central Office and the Commissioner's Office." Id. at 10. He states that the warden's failure to timely respond to his grievance means that "the remedy is assumed to be ignored and is truly exhausted." Id. at 11.

On November 9, 2017, the Court granted Plaintiff leave to proceed *in forma pauperis* in this action. Doc. 6. On July 3, 2018, the Magistrate Judge screened Plaintiff's Amended Complaint, as required by 28 U.S.C. § 1915A, and recommended the Court dismiss Plaintiff's claims against Defendants Allen, Bobbitt, Kilgore, Pineiro, and the Georgia Department of Corrections. Doc. 14.[2] However, the Magistrate Judge also found that Plaintiff asserted non-frivolous claims against Defendants Hutchenson, Fuggitt, Mosley, Williams, and Shoemaker for retaliation, excessive force, and deliberate indifference and directed service on those Defendants. Id. at 16. Those Defendants then executed waivers of service on August 13, 2018, docs. 17–21,

---

[2] Plaintiff did not object to these recommendations, and the Court adopted them on August 20, 2018. Doc. 22.

2

and filed a Motion to Dismiss on September 4, 2018, doc. 23.  Plaintiff filed a Response, doc. 32, Defendants filed a Reply, doc. 44, and Plaintiff filed a Surreply, doc. 56.

## DISCUSSION

Defendants argue Plaintiff's claims should be dismissed because Plaintiff failed to exhaust his administrative remedies.  In support of their Motion, Defendants submitted the sworn declaration of Jeff Sikes, the Grievance Coordinator of Georgia State Prison, doc. 23-2, a copy of the Georgia Department of Corrections' Standard Operating Procedures relating to grievances, doc. 23-3, and copies of Plaintiff's grievance history, docs. 23-4, 23-5, 23-6.  For the following reasons, I find that Plaintiff did not effectively exhaust his administrative remedies before filing this suit and **RECOMMEND** the Court grant Defendants' Motion to Dismiss. Doc. 23.

**I.   Exhaustion**

    **A.   Legal Standard**

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions.  42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000).  The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).  Exhaustion is a mandatory requirement, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the

circumstances. Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (finding that the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. The court may instead "make specific findings in order to resolve the disputed factual issues related to exhaustion." Id. Failure to exhaust administrative remedies is an affirmative defense, and inmates are not required to specially plead or demonstrate exhaustion in their complaint. Jones, 549 U.S. at 216; Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209. Accordingly, "defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." Turner, 541 F.3d at 1082.

**B.      Georgia Department of Corrections' Grievance Procedures**

The Georgia Department of Corrections' general grievance policies are set out in Standard Operating Procedure ("SOP") IIB05-0001. Whatley I, 802 F.3d at 1208; Doc. 23-3. SOP IIB05-0001 contains the procedures that inmates must follow to effectively exhaust their administrative remedies. See Whatley v. Smith (Whatley II), 898 F.3d 1072, 1074 (11th Cir.

2018) ("To exhaust administrative remedies under the Georgia Department of Corrections Standard Operating Procedures ("SOP"), inmates must follow the . . . prison grievance process outlined in SOP IIB05-0001."). Under SOP IIB05-0001, inmates may "file a grievance about any condition, policy, procedure, or action or lack thereof" which "affects the offender personally" and which is not explicitly listed in the SOP as a "non-grievable issue." Doc. 23-3 at 7.

Under SOP IIB05-0001, inmates must file grievances within 10 days of becoming aware of the facts from which the grievance arises. Id. at 10. The grievance is screened by a Grievance Coordinator, who determines whether to accept the grievance for processing. Id. The Grievance Coordinator may also excuse an inmate who files an untimely grievance. Id. If the grievance is accepted for processing, the warden has 40 days to review the grievance and determine whether to grant or deny it. Id. at 12. The inmate can then file a Central Office Appeal if the Grievance Coordinator rejects the grievance, the inmate receives a decision from the Warden, or the time allowed for the Warden's decision has elapsed. Id. at 14. The Commissioner then has 100 days to deliver a decision on the Central Office Appeal. Id. at 15.

### C. Plaintiff's Efforts at Exhaustion

The Court looks first, as it must, to Plaintiff's account of his efforts to exhaust his administrative remedies. Turner, 541 F.3d at 1082. Defendants argue Plaintiff admitted he failed to exhaust his administrative remedies in his Amended Complaint by stating that the warden's failure to respond to his grievance constitutes exhaustion. Doc. 23-1 at 7. Plaintiff responds by stating that he filed two grievances on June 5, 2017, one related to property and one related to the use of chemical spray. Doc. 32 at 2. Plaintiff further states that he appealed both of those grievances. Id. By Plaintiff's account, he properly exhausted his administrative

5

remedies. Because Defendants dispute this exhaustion, the Court turns to step two of the Turner test and considers the parties' factual dispute.

Defendants argue Plaintiff only filed two grievances between the alleged incident and the commencement of this lawsuit, and neither grievance concerned the use of chemical spray. Doc. 23-1 at 7–8. Jeff Sikes, the Grievance Coordinator at Georgia State Prison, gave a sworn declaration stating that he reviewed Plaintiff's 2017 grievances at Georgia State Prison and did not locate any grievances related to the use of chemical spray. Doc. 23-2 at 5. Defendants also submitted a copy of Plaintiff's grievance history from January 2015 through May 2018. Doc. 23-4. This history indicates that Plaintiff filed over 40 grievances while at Georgia State Prison. Prison records reflect that only two of these grievances were filed between the date of Defendants' alleged use of chemical spray (May 31, 2017) and Plaintiff's commencement of this suit (August 7, 2017). Id. Plaintiff submitted Grievance Number 244651 on June 5, 2017, protesting alleged theft of property from his cell. Doc. 23-5 at 4. This grievance concerned an issue that was raised in a prior grievance, was rejected as untimely, and is not germane to this suit. Id. at 2–3, 6–7. Plaintiff submitted Grievance Number 247270, the second grievance during the relevant period, on July 12, 2017, complaining of a nurse's failure to provide him medication on July 1, 2017. Doc. 23-6 at 6. This grievance was also rejected as untimely and is not germane to this suit. Id. at 4. The records show that Plaintiff filed his next grievance, Grievance Number 249461 (related to "Sexual Harassment"), regarding events not related to this case that occurred on August 9, 2017 and did not file *any* grievance concerning any use of physical force until he filed Grievance Number 257881, concerning events on or about January 1, 2018. Doc. 23-4 at 4. Based on these records, Defendants contend that Plaintiff failed to

grieve the use of chemical spray in his cell and, therefore, failed to exhaust his administrative remedies. Doc. 23-1 at 8.

Plaintiff responds that Jeff Sikes is not qualified to speak to Plaintiff's grievances because he was not the grievance coordinator at the time of the alleged incident. Doc. 32 at 1. Plaintiff further claims that he submitted two grievances on June 5, 2017, one concerning property and another concerning the chemical agent. Id. at 2. Plaintiff also asserts that prison officials failed to file his grievance. Id. at 3. Plaintiff claims that he sent letters about the incident to various officials, wrote a statement about the incident in July 2017, and spoke with a "Tina Kelley" about the incident. Id. at 2. Plaintiff did not submit any witness declarations or documentary evidence to support his position.

The Court now resolves this factual dispute based on the evidence before it. Bryant v. Rich, 530 F.3d 1368, 1376 (11th Cir. 2008) ("Where exhaustion . . . is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes . . . ."). At base, Plaintiff claims he submitted a grievance about these events to certain prison counselors, but the grievance was never filed. Defendant contends that no such grievance was submitted. Based on the evidence before the Court, the undersigned finds the position taken by Defendants to be more credible than that taken by Plaintiff. Defendants have provided a full copy of Plaintiff's grievance history stretching over three years. Doc. 23-4. This record reflects that Plaintiff was able to successfully file more than 40 grievances, many of which concerned use of force. Id. Plaintiff's grievance record demonstrates that he filed grievances close in time (before and after) the events giving rise to this case allegedly occurred. And Mr. Sikes provided under oath testimony that he was

unable to locate any record of any grievance by Plaintiff related to chemical spray.[3]  The Court finds it unlikely that prison officials would refuse to process Plaintiff's grievance relating to the allegations raised in this case, given that they have processed so many other grievances Plaintiff filed, both before and after this alleged incident, and, in fact, processed a different grievance on the date Plaintiff alleges he grieved the use of chemical spray.  Doc. 23-5 at 4; see Shaw v. Upton, Case No. 6:16-cv-6, 2017 WL 2313007, at *8 (S.D. Ga. Feb. 13, 2017) (finding a plaintiff's extensive history of successfully filing grievances "belie[d] any contention that prison officials thwarted his attempts to file grievances or otherwise made the grievance process unavailable to him.").  Plaintiff, by contrast, presents no evidence aside from his conclusory assertion that prison officials failed to file his grievance.  Plaintiff was also vague in his Amended Complaint when addressing whether he fully appealed his grievance or if he believed that the warden's failure to respond constituted exhaustion.  Doc. 4 at 10–11.  Given these facts, the Court does not find Plaintiff's claim that he filed a grievance related to the use of chemical spray credible.[4]

Moreover, even if Plaintiff's grievance were lost or not filed, which the record does not support, Plaintiff still did not fully exhaust his administrative remedies, as he was able to successfully file grievances a short time thereafter.  Doc. 23-4 at 4.  A temporary deprivation of access to grievance procedures does not waive a prisoner's duty to exhaust should those procedures later become available.  Bryant, 530 F.3d at 1373 (affirming a district court's finding

---

[3]     The Court rejects Plaintiff's argument that Mr. Sikes is not qualified to testify about his grievance history.  Mr. Sikes's statements in his declaration concern the prison grievance policy and prison records of Plaintiff's grievance history.  Mr. Sikes is qualified to offer testimony on these issues, given his role.

[4]     In his Surreply filed November 26, 2018, Plaintiff alleges for the first time that Defendants transferred him to Valdosta State Prison on June 26, 2018 in retaliation for filing this lawsuit.  Doc. 56.  Plaintiff contends that his ability to present evidence relating to exhaustion was hampered by this transfer, but he fails to explain why or demonstrate that he was actually hindered in any way.

that a plaintiff whose initial grievances were not accepted was required to exhaust grievance procedures upon his transfer to a prison where his grievances were accepted). Proper exhaustion required Plaintiff to request consideration of an untimely grievance presenting the use of chemical spray. Rodriguez v. Chatman, Case No. 5:15-cv-2, 2016 WL 11248528, at *9 (M.D. Ga. July 29, 2016) (recommending dismissal of a prisoner's claim where the prisoner was initially precluded from filing a grievance regarding lack of recreation but later had full access to grievance procedures and did not file an out-of-time grievance related to that issue). There is no indication, and Plaintiff does not allege, that he attempted to file a grievance about this incident once it because clear to him that the grievance he contends he submitted was not actually filed. Accordingly, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss.

## II.    Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal. See Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous

and not brought in good faith if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the forgoing reasons, I, **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss and **DISMISS without prejudice** Plaintiff's Complaint, as amended, for failure to exhaust administrative remedies. I also **RECOMMEND** the Court direct the Clerk of Court to enter the appropriate judgment of dismissal and **CLOSE** this case and **DENY** Plaintiff *in forma pauperis* status on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within 14 days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections

not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 16th day of August, 2019.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA